*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ZAITONA/ZAITONA-CHEEK, Minors.

UNPUBLISHED
January 24, 2025
10:12 AM

No. 371102
Macomb Circuit Court
Family Division
LC Nos. 2023-000108-NA;
2023-000109-NA

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor children, JWZ and DMZ, at the initial dispositional hearing under MCL 712A.19b(3)(b)(*ii*) (parent failed to prevent physical injury or physical abuse), (j) (reasonable likelihood of harm if child is returned to parent), and (k)(*i*) (parent abused child and abuse included abandonment). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JWZ's mother is Sierra Zaitona. Respondent was married to Sierra, but they were separated through the pendency of this case. In 2018, the trial court terminated Sierra's parental rights to JWZ for physical abuse. Respondent completed a case-service plan in that case, and JWZ was returned to his care. Despite Sierra's parental rights being terminated, respondent often left JWZ in her care.

Although she was married to respondent, Sierra had two other children by a different father: DMZ and ZAC. In March 2023, two-year-old ZAC was found dead in Sierra's home from fatal starvation. Sierra and ZAC's biological father were charged with second-degree murder and second-degree child abuse. DMZ and JWZ were in the home when ZAC was found, which investigators described as deplorable, uninhabitable, and filthy.

In addition to seeking termination of Sierra's parental rights to DMZ, the Michigan Department of Health and Human Services (DHHS) sought termination of respondent's parental rights to JWZ and DMZ. JWZ was removed from respondent's care, and, while respondent was

-1-

initially granted supervised parenting time with the children, it was later suspended because the visits caused JWZ emotional distress. The trial court ultimately terminated respondent's parental rights to JWZ and DMZ.[1] Respondent now appeals.

## II. STANDARDS OF REVIEW

We review both a trial court's finding of statutory grounds for termination and its determination of best interests for clear error. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; ___ NW3d ___ (2023) (Docket No. 364195); slip op at 2 (quotation marks omitted).

## III. ANALYSIS

Respondent argues the trial court clearly erred by terminating his parental rights because no statutory grounds existed supporting termination and termination was not in the children's best interests. We disagree.

### A. STATUTORY GROUNDS

The trial court did not clearly err in finding a statutory ground existed to terminate respondent's parental rights.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "[T]he trial court . . . may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H)." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights[.]" *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

The trial court terminated respondent's parental rights under, among other subsections, MCL 712A.19b(3)(j), which permits termination when: "There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Exhibiting behavior that would put a child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j). *White*, 303 Mich App at 712-713. The harm contemplated under this subsection includes emotional, as well as physical, harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

---

[1] Sierra voluntarily released her parental rights to DMZ during the proceedings.

The record reflects that respondent knew Sierra's parental rights were terminated, as well as why they were terminated. Nonetheless, he repeatedly left JWZ in her care. Respondent also failed to alert authorities about the derelict state of Sierra's home. While he denied ever being inside, investigators testified the deplorable state of Sierra's home was visible from the outside, and the odor could also be smelled from outside. Respondent claimed to be unaware of any issues with the home, but the trial court found his testimony incredible, and we defer to the trial court's credibility determinations. See *Miller*, 347 Mich App at 425; slip op at 2. Moreover, respondent himself confirmed there was a vicious dog inside the home—of which he was afraid—yet he still left JWZ there. JWZ and DMZ were in the home when ZAC died, and the record suggests the children likely watched his slow death in real time.

From the beginning, respondent refused to acknowledge ZAC or DMZ as his children because he was not their biological father.[2] Respondent displayed limited interest in DMZ throughout the proceedings and had no bond with him. His callous and cavalier attitude toward DMZ put DMZ at risk of harm if placed in respondent's care. Furthermore, while respondent denied any problems surrounding his bond with JWZ, his parenting time was clearly harmful to JWZ, as demonstrated by the fact that JWZ's problematic behaviors improved after parenting time with respondent was suspended. Given the above factors, there was a reasonable likelihood JWZ and DMZ would be harmed if placed in respondent's care and the trial court did not err in concluding MCL 712A.19b(3)(j) was satisfied.[3]

## B. BEST INTERESTS

The trial court did not clearly err in finding it was in the children's best interests to terminate respondent's parental rights.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id.* This Court focuses on the child—not the parent— when reviewing best interests. *Atchley*, 341 Mich App at 346.

When determining best interests:

[A] court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.

---

[2] Respondent's claim is meritless, because he was married to Sierra when DMZ and ZAC were conceived and born, and never took any steps to refute the presumption of paternity on the basis of this marriage. See *In re KH*, 469 Mich 621, 634-635; 677 NW2d 800 (2004).

[3] Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *Ellis*, 294 Mich App at 32, we need not consider whether termination was proper under MCL 712A.19b(3)(b)(*ii*) or (k)(*i*).

The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The trial court "has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "[I]f the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *White*, 303 Mich App at 715. But, "if keeping the children together is contrary to the best interests of an *individual* child, the best interests of *that* child will control." *Id*. (quotation marks and citation omitted).

While respondent and JWZ had a bond, the bond was unhealthy. JWZ entered care in 2017, when he was four months old, because he suffered significant injuries at Sierra's hands, and her parental rights were terminated as a result of the abuse— a fact of which respondent was well aware. From 2017 to 2018, JWZ was out of respondent's care for 14 months while respondent completed services, including parenting classes. But, despite completing services, respondent utterly failed to protect JWZ from Sierra after JWZ was returned to his care. As a result, JWZ was exposed to deplorable living conditions and likely witnessed the slow murder of ZAC.

JWZ was clearly neglected in respondent's care and was not enrolled in school. He demonstrated food insecurity and had difficulty regulating his emotions toward DMZ and other children, with whom he struggled to interact. JWZ was academically and socially behind his peers, and had to repeat kindergarten. Respondent's supervised parenting time with JWZ was suspended after JWZ suffered emotional distress and displayed encopresis, and, after they were suspended, JWZ's behavior improved, and he did not ask about respondent. Indeed, respondent did not notice JWZ's distress, and refused to accept responsibility for the harm he caused JWZ.

By contrast, DMZ had no observable bond with respondent, let alone that of a parent and child. DMZ referred to respondent by a nickname, and, after parenting time was suspended, did not ask about respondent. Respondent refused to accept responsibility for DMZ and failed to protect him from Sierra and his biological father. Despite reporting he wanted custody of DMZ, respondent continued to deny DMZ was his child, or his responsibility.

Aside from respondent's bond (or lack thereof) with the children, respondent also demonstrated he was either unable, or unwilling, to effectively parent the children despite completing parenting classes multiple times and voluntarily participating in therapy. Meanwhile, JWZ and DMZ were doing well in the care of their foster mother, with whom they shared a bond, and who was devoted to their well-being and wanted to adopt them. The evidence suggests the children would regress if returned to respondent's care, and it is unclear how respondent, who reportedly worked excessive hours and had a history of failing to protect the children, would be able to provide appropriate childcare or ensure they attended school and appointments— appointments necessary to help them overcome their trauma. Respondent also has a history of unstable housing, and the lease to his condominium was expired at the time of termination.

Respondent points out that a relative wanted to adopt DMZ, and another relative wanted to be JWZ's guardian, but this was not in the children's best interests. As found by the trial court, the evidence supports that the children were bonded to each other, and separation would not be in their best interests. Additionally, we fail to see how it would be proper to place DMZ with the relative respondent names, who reported she knew ZAC was "skinny" but failed to intervene even after learning Sierra and his biological father were not feeding him. She was also often outside the home, indicating she was aware of its deplorable state, and also knew about the vicious dog that lived inside. Placing DMZ in the care of such an individual would certainly not be in his best interests. Furthermore, JWZ's relative in question testified she knew JWZ was not enrolled in school and that respondent allowed Sierra to care for him despite her rights having been terminated, but failed to intervene. A guardianship is also not in JWZ's best interests because his need for permanency and stability can be met by his foster mother, with whom he shares a bond and who wishes to adopt him. The record overwhelmingly demonstrates that termination of respondent's parental rights is in the children's best interests.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

-5-